HONORABLE JUDGE BENJAMIN H. SETTLE
MAGISTRATE JUDGE J. RICHARD CREATURA

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| WILLIAM MARTIN, | NO. 3:18-cv-05929-BHS-JRC |
| Plaintiff, | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | **NOTE ON MOTION CALENDAR: April 3, 2020** |
| JEFF UTTECHT, et al., | |
| Defendants. | |

Defendants JEFFREY UTTECHT, STEPHEN BOLINGER, JOSHUA CRUGER, JERRY WONDERS, and SHAWNA NISSEN, through their attorneys, ROBERT W. FERGUSON, Attorney General, and MARKO L. PAVELA, Assistant Attorney General, move the court for an order granting Defendants' Motion for Summary Judgment. This motion is filed pursuant to Fed. R. Civ. P. 56 and is supported by the following Memorandum.

## I.  STATEMENT OF FACTS

Jerry Wonders and Shawna Nissen are two Correctional Officers periodically assigned to Gate 35 at the Coyote Ridge Corrections Center (CRCC). Declaration of Jerry Wonders (Wonders Decl.) ¶¶ 3–4; Declaration of Shawn Nissen (Nissen Decl.) ¶ 3. While assigned to Gate 35, officers work in teams to conduct pat searches, to mitigate transfer of contraband, and to monitor adherence to prison rules regarding inmate attire,

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

1

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

proper display of ID, and the like. Wonders Decl. ¶ 3. Through years of experience, both Wonders and Nissen have become proficient in conducting pat searches and dealing with contraband; Wonders has even taught incoming officers on the subject. Wonders Decl. ¶¶ 2, 8–12; Nissen Decl. ¶¶ 2, 5. These searches are routine and done to help maintain safety and security within the prison. Wonders Decl. ¶ 6; Nissen Decl. ¶ 3; Declaration of Javier Lagunas (Lagunas Decl.) ¶ 4.

Plaintiff Martin[1] is an inmate formerly housed at CRCC, who would frequently approach Gate 35 with prohibited contraband, visible to the officers assigned there. Wonders Decl. ¶ 3; Nissen Decl. ¶ 4; Lagunas Decl. ¶ 4. This led to Martin being occasionally searched, to determine whether Martin was concealing any other items. Nissen Decl. ¶ 5; Lagunas Decl. ¶ 4. Martin became argumentative while being searched, often claiming that work supervisors gave Martin permission to possess prohibited items, which they cannot do. Wonders Decl. ¶ 13; Declaration of Marko Pavela (Pavela Decl.) Exhibit (Ex.) 1, at 36–37. But even despite Martin's argumentative nature, officers still sought to give Martin space to self-correct, sought advice from supervisors on how to deal with Martin, and even tried pat searching Martin less frequently to de-escalate their encounters. Wonders Decl. ¶ 13; Nissen Decl. ¶¶ 5–6. Officers even chose to deal with Martin's rule violations at the lowest level, informally, rather than infracting Martin. Wonders Decl. ¶¶ 10–11.

During August 2018, Martin began using the Department's inmate grievance system to accuse Correctional Officer Jerry Wonders of verbal sexual harassment during these pat searches. Pavela Decl. Ex. 2. The Department takes such allegations seriously, and facilities such as CRCC initiate an investigation under the Prison Rape Elimination Act (PREA) upon receipt of a complaint alleging staff on offender misconduct.

---

[1] Martin, since transferred from CRCC to the Airway Heights Corrections Center in Airway Heights, WA (Dkt. No. 25, at 2), has self-identified as transgender. But Defendants are unaware of Martin's preferred pronouns. Defendants therefore refer to Martin by name, or use the pronouns they/them/theirs, to avoid misgendering Martin.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

2

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1   Declaration of Stephen Bolinger (Bolinger Decl.) ¶¶ 4–6. CRCC Superintendent
2   Jeffrey Uttecht and CRCC Human Resources are notified, and the Superintendent assigns an
3   investigator to the matter. *Id.* ¶ 6. The formal investigation is defined by process, and consists
4   of fact finding only. *Id.* ¶ 7. The results of the investigation are then sent to the
5   Superintendent, who makes conclusions about whether a violation can be substantiated, and
6   how the facility should proceed. *Id.* This first investigation was assigned case number
7   18-18091. *Id.* ¶ 9.

8       When Martin continued to file similar grievances; DOC appended the investigation
9   file with these additional similar complaints. Bolinger Decl. ¶ 9. Ultimately, after staff
10  conducted interviews with Martin, Wonders, and three other officers who were present at the
11  pat searches which Martin identified, Superintendent Jeffrey Uttecht determined Martin's
12  allegations of verbal harassment were unfounded. *Id.* ¶¶ 9–10, Exs. 1, 2. Uttecht's finding
13  was based on his review of twenty-four exhibits, which included statements from three
14  officers in good standing who witnessed the encounters between Wonders and Martin and
15  denied that any inappropriate comments were made. Bolinger Decl. Exs. 1, 2.

16      Martin continued filing grievances, escalating the allegations within to encompass
17  physical harassment (or "groping") as well. Pavela Decl. Exs. 3–6. The Department initiated
18  a second PREA investigation, identified by case number 18-18162. Bolinger
19  Decl. ¶¶ 11–12. The coordinating PREA Specialist also checked in with Martin personally
20  during this time. *Id.* ¶ 13. Staff investigated Martin's complaints through interviews with
21  Martin, Wonders, another officer present during the pat searches where Martin claimed this
22  groping occurred, and another inmate as well. *Id.* ¶ 12. Importantly, staff reviewed
23  surveillance video of the pat searches in question as well. *Id.* After review of the
24  investigation, Superintendent Uttecht again determined Martin's allegations to be
25  unfounded. *Id.* In making this determination, Uttecht reviewed twenty-one exhibits,
26

1    including the video, which demonstrated that the "pat searches conducted by officer Wonders

2    on offender Martin [were] standard routine searches." Bolinger Decl. Exs. 3, 4.

3          This second PREA investigation led to issue of a prison rules infraction for Martin,

4    for violation of Wash. Admin. Code § 137-25-030 (549) – "Providing false or misleading

5    information during any stage of an investigation of sexual misconduct, as defined in

6    department policy." Bolinger Decl. ¶ 14. Typically, Department staff are reluctant to issue

7    such infractions because they do not want incarcerated individuals to hesitate in reporting

8    PREA complaints or incidents that made them uncomfortable. *Id.* However, in egregious

9    situations such as this, where video made it clear that Wonders' pat search of Martin was not

10   at all inappropriate, and where it is clear that an inmate sought to make use of PREA to harm

11   or harass staff, an infraction is a necessary and appropriate consequence. *Id.*; Declaration of

12   Joshua Cruger (Cruger Decl.) ¶ 7, Exs. 1, 3–4. Such false claims not only affect staff

13   negatively, but also undermine the Department's work to enforce PREA and maintain safe

14   and secure prisons. Bolinger Decl. ¶ 14.

15         Martin continued accusing staff of misconduct during the pendency of the infraction

16   process, and Martin's accusations grew in scope to include Correctional Officer

17   Shawna Nissen as well. Bolinger Decl. ¶¶ 15–16. Staff initiated a third PREA investigation,

18   18-18362, and this investigation included interviews with Martin, Nissen, and another officer

19   present during a pat search where Martin alleged that Nissen had threatened to retaliate

20   against them. *Id.* ¶ 16. Superintendent Uttecht reviewed the investigation, including nine

21   exhibits, and determined once again that Martin's allegations were unfounded.

22   Bolinger Decl. Exs. 5, 6.

23         Martin filed the operative Second Amended Complaint on April 5, 2019. Dkt. No. 11.

24   Through this complaint, Martin seeks to perpetuate the accusations of misconduct against

25   Wonders and Nissen, including those which were thoroughly disproven by review of

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC                    4                    ATTORNEY GENERAL OF WASHINGTON
                                                                      Corrections Division
                                                                      PO Box 40116
                                                                      Olympia, WA 98504-0116
                                                                      (360) 586-1445

1   surveillance video, and to now target additional CRCC staff with false accusations as well.

2   Dkt. No. 11. Defendants now move for dismissal of Martin's claims against them.

3                          **II.   ISSUES PRESENTED**

4       1.      Whether the Western District of Washington is a proper venue for Plaintiff's

5   lawsuit?

6       2.      Whether Defendants are entitled to Summary Judgment on Plaintiff's

7   constitutional claims against them?

8       3.      Whether Defendants are entitled to Qualified Immunity?

9                          **III.   ARGUMENT**

10  **A.   The Western District of Washington is an Improper Venue for Plaintiff's Lawsuit**

11      Statutes provide guidance on the appropriate venue for civil actions brought in the

12  district courts of the United States. 28 U.S.C. § 1391(a). Generally, a civil action may be

13  brought in the judicial district in which any defendant resides, or in the judicial district in

14  which a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b).

15  Fed. R. Civ. P. 12(b)(3) allows for dismissal of lawsuits brought in an improper venue;

16  28 U.S.C. § 1406 states that lawsuits brought in an improper venue can be dismissed, or

17  transferred to an appropriate venue.

18      Here, all of the Defendants work at the Coyote Ridge Corrections Center (CRCC), in

19  Connell, WA. Dkt. No. 11, at 5. Plaintiff was also housed at CRCC when the events described

20  in Plaintiff's lawsuit are alleged to have occurred. Dkt. No. 11, at 4. Although Plaintiff was

21  housed at the Monroe Correctional Complex, in Monroe, WA, when Plaintiff filed this

22  lawsuit, Dkt. No. 11, at 2, Plaintiff is now housed at the Airway Heights Corrections Center,

23  in Airway Heights, WA. Accordingly, Defendants asserted improper venue as an affirmative

24  defense in their Answer to Plaintiff's lawsuit. Dkt. No. 23, at 3.

25      In sum, all the Defendants are in the Eastern District of Washington, the Plaintiff is

26  in the Eastern District of Washington, and these events are alleged to have occurred in the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

5

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1   Eastern District of Washington. The Western District of Washington is therefore an

2   inappropriate venue for this lawsuit. As a threshold matter, this Court should first dismiss,

3   or transfer Plaintiff's lawsuit to the Eastern District of Washington, on these grounds.

4   28 U.S.C. § 1406.

5   **B.      Defendants are Entitled to Summary Judgment on Plaintiff's Constitutional Claims, Whether in this District or the Eastern District**

6

7           Summary judgment should be granted where the pleadings, discovery conducted, and

8   affidavits, if any, show that there is no genuine issue as to any material fact and that the

9   moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*,

10  477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56. The party seeking summary judgment must

11  show that no genuine issue of material fact exists and that they are entitled to judgment as a

12  matter of law by showing that there is an absence of evidence to support the non-moving

13  party's case. *Celotex*, 477 U.S. at 325. To determine if summary judgment is appropriate, the

14  Court must consider whether a particular fact is material and whether there is a genuine

15  dispute as to that fact left to be resolved. Factual disputes that do not affect the outcome of

16  the suit under governing law will not be considered. *Id*. Where there is a complete failure of

17  proof concerning an essential element of the non-moving party's case, all other facts are

18  rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*,

19  477 U.S. at 324; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).

20          Once the moving party has carried its burden, the party opposing the motion must do

21  more than simply show that there is some metaphysical doubt as to the material facts.

22  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Ninth

23  Circuit has expressly stated that "[n]o longer can it be argued that any disagreement about a

24  material issue of fact precludes the use of summary judgment." *California Architectural*

25  *Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert.*

26  *denied*, 484 U.S. 1006 (1988). Further, genuine issues of material fact are not raised by

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

6

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

conclusory or speculative allegations; the purpose of summary judgment is not to replace conclusory allegations in pleading form with conclusory allegations in an affidavit. *Lujan*, 497 U.S. at 888; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (citation omitted)).

> 1. **Surveillance video demonstrates that the "groping" alleged by Martin did not occur; Martin can no longer sustain claims under the Eighth Amendment**

Martin's claims, as they relate to the Eighth Amendment, appear to center around a series of pat searches, which Martin claims were intended to harass Martin because of Martin's sexual orientation or gender identity. Dkt. No. 11, at 4. The behavior Martin *alleges* is troubling, and would have no place in a prison.

Articulating the legal standard for such claims, the Ninth Circuit recently held:

> [A] prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner. This definition recognizes that there are occasions when legitimate penological objectives within a prison setting require invasive searches. It also accounts for the significant deference courts owe to prison staff, who work in challenging institutional settings with unique security concerns. In a case… where the allegation is that a guard's conduct began as an invasive procedure that served a legitimate penological purpose, the prisoner must show that the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure. Such a showing will satisfy the objective and subjective components of an Eighth Amendment claim.

*Bearchild v. Cobban*, 947 F.3d 1130, 1144–45 (9th Cir. 2020).

> a. **Martin was never "groped" by Wonders**

Here, surveillance video demonstrates that these pat searches were professional and appropriate, and did not occur as Martin claims. Bolinger Decl. ¶ 14; Cruger Decl. ¶ 7, Exs. 3–4. This evidence demonstrates that no "lingering or groping" occurred, but quite the opposite—that "if any scrutiny could be made, [these pat searches] were not as thorough as they

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

7

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

might have been." Cruger Decl. Ex. 1. Evidence further demonstrates that these pat searches were not "without legitimate penological justification" or for Wonders' "sexual gratification, or for the purpose of humiliating, degrading, or demeaning" Martin. *See Bearchild*, 947 F.3d at 1144. The brief and professional pat searches occurred only because Martin consistently presented to officers while flaunting contraband. Wonders Decl. ¶¶ 5–6; Nissen Decl. ¶¶ 4–5; Lagunas Decl. ¶ 4. Jerry Wonders never "groped" Martin during a pat search.

> **b.     Alleged insults cannot sustain an Eighth Amendment claim on their own**

Martin's allegations of groping aside, Martin is left alleging only tasteless and offensive comments made by Officer Wonders. First, these comments, like the groping alleged, simply did not occur. Wonders Decl. ¶¶ 16–18. Each time Wonders and Martin interacted, other officers were present. *Id.* ¶ 4. According to these officers, who witnessed Wonders and Martin's interactions, not only did Wonders not make these comments, but such comments would have been completely out of Wonders' character. Nissen Decl. ¶ 10; Lagunas Decl. ¶¶ 5–6. Even if the Court may not engage in credibility determinations while evaluating a motion for summary judgment, Martin's claims cannot survive here while supported by only "uncorroborated and self-serving testimony." *Manley v. Rowley*, 847 F.3d 705, 710–11 (9th Cir. 2017) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)).[2] When Wonders did search Martin, these searches were done professionally.

But even if the Court accepts Martin's allegations regarding name calling as true, while hurtful, unprofessional, and without a place in a prison, Wonders Decl. ¶ 17, the mere comments alleged by Martin would not rise to the level of a constitutional violation on their own. Martin has neither claimed that name calling alone can invoke constitutional protection, nor can Martin. In *Somers v Thurman*, the Ninth Circuit found no Eighth Amendment violation where female

---

[2] While Manley's claims did survive summary judgment on appeal, they were supported by prison medical records and video. *Manley*, 847 F.3d at 709.

1    prison staff joked, gawked, and pointed at naked male inmates showering. *Somers v. Thurman*,

2    109 F.3d 614, 624 (9th Cir. 1997) *cert. denied*, 522 U.S. 852 (1997). The Ninth Circuit reasoned

3    that the shower viewing did not involve any physical contact and that "[t]o hold that gawking,

4    pointing, and joking violates the prohibition against cruel and unusual punishment would

5    trivialize the objective component of the Eighth Amendment test and render it absurd."

6    *Id.* at 624. The Ninth Circuit also noted that "the exchange of verbal insults between inmates and

7    guards is a constant, daily ritual observed in this nation's prisons" which is not condoned, but

8    does not violate the Eighth Amendment. *Id.* at 622.

9        Even since *Somers*, the Ninth Circuit has consistently held that the Eighth Amendment's

10   protections do not extend to mere verbal sexual harassment. *See Austin v. Terhune*, 367 F.3d

11   1167, 1171 (9th Cir. 2004) (finding that an incident involving a guard that exposed himself to

12   an inmate but never physically touched the inmate was not sufficiently serious to constitute an

13   Eighth Amendment violation); *Blueford v. Prunty*, 108 F.3d 251, 256 (9th Cir. 1997) (affirming

14   summary judgment in favor of prison officials where "the only arguably sexually harassing

15   conduct . . . was verbal"); *Blacher v. Johnson*, 517 Fed. Appx. 564 (9th Cir. 2013) (finding that

16   Eighth Amendment's protections did not extend to mere verbal sexual harassment) (citation

17   omitted).

18       The groping alleged by Martin did not occur, and Martin cannot create an issue of

19   material fact to survive summary judgment on these claims in the face of video evidence to the

20   contrary. Even if the Court accepts his allegations of name calling as true, these are not enough

21   to sustain his Eighth Amendment claims against *any* Defendant here. All the Defendants are

22   therefore entitled to dismissal of Martin's Eighth Amendment claims against them.

23   ///

24   ///

25   ///

26   ///

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

9

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1
2

**2.  Martin cannot show that they were discriminated against because of their membership in a protected class, and so Martin's Fourteenth Amendment claims fail**

3    Martin also alleges discrimination, in violation of the Fourteenth Amendment.

4    Dkt. No. 11, at 4. Martin's claims, which do not make any mention of "due process," appear to

5    implicate only the Equal Protection clause of that Amendment.

6    The Equal Protection Clause requires the State to treat all similarly situated people

7    equally. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prevail on

8    an equal protection claim brought under § 1983, a plaintiff must allege facts plausibly showing

9    that " 'the defendants acted with an intent or purpose to discriminate against [them] based upon

10   membership in a protected class.' " *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1166

11   (9th Cir. 2005) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)); *see also*

12   *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (Plaintiff claiming an

13   equal protection violation must show that they were discriminated against because of their

14   membership in a protected class and that this discrimination was intentional).

15   This standard is a high bar that cannot be met by allegations alone. The requisite

16   " '[d]iscriminatory purpose' . . . implies more than intent as volition or intent as awareness of

17   consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of

18   action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable

19   group." *Navarro v. Block*, 72 F.3d 712, 716 n.5 (9th Cir. 1995) (quoting *Personnel Adm'r of*

20   *Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). "Indeed, showing that different persons are treated

21   differently is not enough, without more, to show a denial of equal protection." *Griffin v. Cty.*

22   *Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218, 230 (1964).

23   Further, in the prison context, equal protection rights are "judged by a standard of

24   reasonableness—specifically, whether the actions of prison officials are 'reasonably related to

25   legitimate penological interests.' " *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (quoting

26   *Turner v. Safley*, 482 U.S. 78, 89 (1987)). And for equal protection purposes, prisoners are not

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

10

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

a suspect class, nor are they entitled to identical treatment or resources as other inmates simply because they are all inmates. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).

If Martin's Fourteenth Amendment claim is that Martin was searched because of their status as a transgender person, Martin cannot show the requisite discriminatory purpose. The purpose of the pat searches was to detect contraband, including potential weapons, and promote prison safety. Martin frequently and openly violated the Department's policies regarding contraband, thus necessitating pat searches of Martin's person. Wonders Decl. ¶¶ 5–7; Nissen Decl. ¶¶ 4–5; Lagunas Decl. ¶ 4. Incarcerated individuals are prohibited from possessing a variety of seemingly innocuous items, such as pens, during prisons movement, because of the danger they present in the prison context, and particularly when large numbers of individuals are moving and interacting. These movements are when Martin and Wonders would interact, and when Wonders was responsible to help maintain the safety and security of the incarcerated population and staff. Wonders Decl. ¶ 6; Nissen Decl. ¶ 4.  In fact, Officers Wonders and Nissen are required by the nature of their job to search inmates carrying contraband during these movements. Wonders Decl. ¶ 3; Nissen Decl. ¶ 3.

Further, Wonders and Nissen deny Martin's account of these events, and there is no evidence sufficient to convince a reasonable trier of fact that these necessary searches were instead some sort of pretext to discriminate against a transgender inmate, nor can Martin show that any similarly situated individuals were treated differently. Wonders Decl. ¶¶ 16–18; Nissen Decl. ¶¶ 7–10; Lagunas Decl. ¶ 5. *See Furnace v. Sullivan*, 705 F.3d 1021, 1030–31 (9th Cir. 2013) (Intentional discrimination requires an individual to show that they were treated differently from individuals who were similarly situated to them); *See Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948-49 (9th Cir. 2003) (Plaintiff must "produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the challenged action was motivated by discriminatory intent]"). *See also e.g.*, *Barnes v. Arden*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

11

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

*Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985) (courts are only required to draw reasonable inferences). Martin has not shown, and cannot show, that Officers Wonders and Nissen discriminated against Martin because of Martin's membership in a protected class, or treated Martin differently than any other inmate carrying visible contraband, so these defendants are entitled to dismissal of Martin's Fourteenth Amendment claims against them.

Similarly, if Bolinger, Cruger, or Uttecht did anything to hold Martin accountable for making false accusations, that was not because of Martin's membership in a protected class, but because video evidence made it clear to them that Martin's accusations were false and intended to harm a staff member. Bolinger Decl. ¶ 14; Cruger Decl. ¶ 7, Exs. 1, 3–4. Martin cannot overcome this by merely claiming otherwise, and cannot demonstrate that Martin was treated differently from anyone else similarly situated, and so Bolinger, Cruger, and Uttecht are entitled to dismissal of these claims against them.

> **3.    Martin's First Amendment claims are conclusory and bare and should be dismissed**

While Martin alleges violations of the First Amendment, Dkt. No. 11, at 4, exactly how the First Amendment is implicated by Martin's claims remains unclear to the Defendants. Defendants are aware, however, that Martin is entitled to a lesser standard of pleading as a *pro se* litigant. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). So Defendants first assert that Martin's First Amendment claims are too bare and conclusory to continue, and then out of an abundance of caution strain to interpret Martin's claims as allegations of some form of retaliation against Martin on account of Martin's status as a transgender individual.

But even under relaxed standards of pleading, such a retaliation claim still requires five basic elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

12

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

(4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

Whether the "adverse action" alleged is being selected for a pat search, or being subject to prison discipline, Martin cannot sustain a claim that any protected conduct was chilled. Pat searches are a normal fact of life in prisons and would not chill a reasonable inmate from engaging in protected conduct. *See Rhodes*, 408 F.3d at 568. Pat searches of inmates seen with contraband are also not "adverse actions," but routine, necessary responses by prison staff, to mitigate such contraband and maintain institutional safety and order. Wonders Decl. ¶¶ 3–6; Nissen Decl. of Nissen ¶ 3. Even if pat searches or following processes regarding prison discipline were "adverse actions," neither carrying contraband, nor providing false information to investigators, are protected conduct under the First Amendment. And again, no reasonable inmate of ordinary firmness would be chilled in their expression simply for being pat searched after being observed carrying contraband. Finally, the Department has legitimate penological interests in both conducting appropriate pat searches of inmates observed with contraband and appropriately subjecting inmates to prison discipline for rule violations. Allowing inmates to lie to investigators during sexual misconduct investigations would not only affect staff negatively, but also undermine the Department's work in eliminating such misconduct. Bolinger Decl. ¶ 14. This very Court has recognized these legitimate penological interests by rejecting claims of First Amendment violations from other inmates infracted for providing false information through a PREA complaint. *Payment v. Roiko*, C14-5633 BHS, 2015 WL 4724626, at *6 (Western District of WA, Aug. 10, 2015) (unpublished).

Martin must do more than merely name the First Amendment and expect this lawsuit to continue under that Amendment. These claims are too bare, and should be dismissed. But even providing Martin every benefit so far as the standards of pleading, none of these Defendants did

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

13

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1   anything to Martin because of Martin's protected conduct, but instead engaged in normal safety

2   and policy responses to Martin's actions because Martin was either carrying contraband or

3   caught lying to investigators. Dismissal of Martin's First Amendment claims is therefore

4   appropriate here.

5   **C.      These Defendants Are Entitled to Qualified Immunity from Martin's § 1983 Claims**

6          To prevail on a claim for damages, Martin must defeat the defense of qualified immunity.

7   *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016). To defeat a claim of qualified

8   immunity, Martin must show, "first, [that they] suffered a deprivation of a constitutional or

9   statutory right; and second [that such] right was clearly established at the time of the alleged

10  misconduct." *Taylor v. Barkes,* 135 S. Ct. 2042, 2044 (2015) (per curiam). The Court may decide

11  which step of the analysis to undertake first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

12  Failing at either one will preclude Martin from recovering damages. *Id.*

13         To be clearly established, "a right must be sufficiently clear that *every* reasonable official

14  would have understood that *what he is doing* violates that right." *Taylor,* 135 S. Ct. at 2044

15  (emphasis added) (quoting *Reichle v. Howards,* 566 U.S. 658 (2012)). Although a plaintiff need

16  not find "a case directly on point, . . . existing precedent must have placed the . . . constitutional

17  question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). That is, existing

18  precedent must have "placed beyond debate the unconstitutionality of" the officials' actions, as

19  those actions unfolded in the specific context of the case at hand. *Taylor,* 135 S. Ct. at 2044. A

20  plaintiff must prove that "precedent on the books" at the time the officials acted "would have

21  made clear to [them] that [their actions] violated the Constitution." *Id.* at 2045. In addition, when

22  the Circuit Courts of Appeal are divided on an issue of law that is central to a cause of action

23  alleged, qualified immunity applies. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017) (citing

24  *Wilson v. Layne,* 526 U.S. 603, 618 (1999) ("noting that it would be 'unfair' to subject officers

25  to damages liability when even 'judges . . . disagree' "). Finally, the clearly established inquiry

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

14

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1 | must not be at too high of a level of generality. *See e.g. City & Cty. of San Francisco v. Sheehan*,
2 | 135 S. Ct. 1765, 1775–76, (2015).

3 |     Defendants first reassert that no constitutional violation occurred. Martin was pat
4 | searched because Martin frequently and openly carried contraband, and because pat searches are
5 | a normal part of prison and occur hundreds of times a day to keep prisons safe. Martin was
6 | subject to prison discipline for fabricating claims about groping, and only after video evidence
7 | made it clear that Martin's claims were demonstrably false. Neither Wonders nor Cruger targeted
8 | Martin with slurs, nor did any of these defendants ever seek to ridicule, harm, or harass Martin
9 | because of Martin's gender identity.

10 |     But even if this Court were to find that some of Martin's claims to the contrary should
11 | survive summary judgment, qualified immunity would still be appropriate here because no
12 | "precedent on the books" at the time the Defendants acted "would have made clear to [them]
13 | that [their actions] violated the Constitution." *Taylor,* 135 S. Ct. at 2045. Under this prong of the
14 | inquiry, the question is not whether Martin's surviving claims would be viable under *Bearchild*,
15 | but instead under the case law that existed at the time of Defendants' actions. *See Taylor,*
16 | 135 S. Ct. at 2045.

17 |     Martin has the burden of proving that the specific right claimed was clearly established
18 | at the time of the alleged misconduct. *Davis v. Scherer*, 468 U.S. 183, 191 (1984). Until this
19 | burden is met, the Defendants are presumed to be immune from suit and are entitled to dismissal.
20 | *ACLU of Maryland v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993).

21 |     **1.**    **The Defendants did not violate any "clearly established" Eighth Amendment**
22 |     **case law**

23 |     Searches intended to harass may violate the Eighth Amendment. *See Hudson v. Palmer*,
24 | 468 U.S. 517, 530 (1984). Prison officials' knowledge of the risk of psychological trauma from
25 | body searches of female inmates by male guards, for example, can make such searches a
26 | violation of the Eighth Amendment. *See Jordan v. Gardner*, 986 F.2d 1521, 1526–30

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

15

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

(9th Cir. 1993) (en banc). And even other Courts of Appeals have found that "frequent retaliatory cell searches" and allegations evidencing a "pattern of calculated harassment" can constitute a claim under the Eighth Amendment, *Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991), and that a "prisoner states a claim under the Eighth Amendment when he plausibly alleges that [repetitive and redundant strip searches, and issue of a see through jumpsuit, were] motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security in prisons." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015).

But the Ninth Circuit has also held that allegations that an officer entered an inmate's cell and approached the inmate while he was on the toilet, then rubbed his thigh against the inmate's thigh, "began smiling in a sexual [manner], and left the cell laughing," were not sufficient to support a violation of the Eighth Amendment. *Watison v. Carter*, 668 F.3d 1108, 1112-13 (9th Cir. 2012); *see also Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998) ("there is no evidence that [Plaintiff] suffered anything more than a brief unwanted touch on his buttocks. We bear in mind that not " 'every malevolent touch by a prison guard [or civilian prison worker] gives rise to a federal cause of action.' " (citations omitted); *see also Vigliotto v. Terry*, 873 F.2d 1201 (9th Cir. 1989) (generalized allegations of harassing searches are insufficient to survive summary judgment).

Similarly, the Ninth Circuit has also stated that to "hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd." *Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997). And again, the Ninth Circuit has thus far held that the Eighth Amendment's protections do not extend to mere verbal sexual harassment. *See Austin*, 367 F.3d at 1171 (finding that an incident involving a guard that exposed himself to an inmate but never physically touched the inmate was not sufficiently serious to constitute an Eighth Amendment violation); *Blueford*, 108 F.3d at 256 (affirming summary judgment in favor of prison officials where "the only arguably sexually harassing conduct . . . was verbal");

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

16

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

1  *Blacher*, 517 Fed. Appx. 564 (finding that Eighth Amendment's protections did not extend to

2  mere verbal sexual harassment).

3       Instances where the Ninth Circuit found that an inmate plaintiff *did* plead enough to

4  sustain a sexual harassment claim further illustrate the type of behavior that would be

5  constitutionally impermissible, and that derogatory name calling alone is not unconstitutional

6  beyond debate so that Martin can prevail against a defense of qualified immunity. Bearchild, for

7  example, alleged a five minute pat search involving "rubbing, stroking, squeezing, and groping

8  in intimate areas" followed by a guard glaring down on an inmate's penis and then mocking the

9  inmate. *Bearchild*, 947 F.3d at 1135. In *Schwenk v. Hartford*, an inmate plead:

10  
11  
> [A guard] winking, performing explicit actions imitating oral sex, making
> obscene and threatening comments, watching [her] in the shower while 'grinding'
> his hand on his crotch area, and repeatedly demanding that [she] engage in sexual
> acts with him. [She] further alleged that [the guard] later propositioned [the
> inmate] for sex in exchange for "girl stuff" and then forcibly grabbed her buttocks
> when she declined. [She] tried to avoid [the guard] after that encounter, but [the
> guard] subsequently entered her cell, exposed himself, demanded oral sex, and
> then pinned [her] against the bars of her cell and "began grinding his exposed
> penis into her buttocks" when she refused to comply.

12  
13  
14  

15  *Bearchild*, 947 F.3d at 1142 (quoting *Schwenk v. Hartford,* 204 F.3d 1187, 1193–94 (9th Cir.

16  2000).

17       Similarly, *Wood v. Beauclair*, 692 F.3d 1041 (9th Cir. 2012), involved "aggressive pat

18  searches in front of other inmates on a number of occasions," and on multiple occasions entering

19  that inmate's cell and forcibly grabbing his penis. *Bearchild*, 947 F.3d at 1142 (quoting *Wood v.*

20  *Beauclair*, 692 F.3d at 1044–45). Thus, the case law on the books when Defendants took their

21  actions, and even current case law, does not establish that allegations of only verbal insults can

22  implicate the Eighth Amendment.

23       Martin's claims of groping should not survive summary judgment where there is video

24  evidence demonstrating that his allegations are false. Martin's remaining allegations, even

25  viewed in the light most favorable to Martin, would still amount to no more than hearing verbal

26  derogatory slurs during a pat search. Had this occurred it would be hurtful, and inappropriate,

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

17

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

but a few instances of name calling during brief, professional, and appropriate pat searches fall squarely among the cases in which Courts have declined to find a violation of the Eighth Amendment.

Accordingly, Martin's allegations of name calling by either Wonders or Cruger, even if they were true, simply do not rise to the level of harm that any caselaw on the books at the time of Defendants' actions had held to be an Eighth Amendment violation.

### 2. The Defendants did not violate any "clearly established" First or Fourteenth Amendment case law

If Martin's Fourteenth Amendment claim is that Martin was discriminated against and subjected to pat searches on account of being transgender, Martin's practice of consistently presenting to Gate 35 with contraband, and not Martin's gender, made it necessary for these searches to occur. Martin's gender does not grant Martin immunity from prison rules regarding contraband, nor would any case law suggest otherwise. Even if this Court did allow Martin's Fourteenth Amendment claims to survive summary judgment, the Defendants would still be entitled to qualified immunity on these claims, because they only did what any reasonable prison official would do – conduct occasional pat searches on an inmate frequently observed with contraband. The Ninth Circuit has not yet held that inmates have any right to be free from brief, clothed, body searches, even cross-gender searches. *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc); *Grummett v. Rushen*, 779 F.2d 491, 495 (9th Cir. 1985).[3] Thus, there is no clearly established right not to be subject to such searches, particularly when the person in question is carrying visible contraband.

Similarly, Bolinger, Cruger, or Uttecht, for their role in the issue of an infraction, did not violate any clearly established constitutional precedent, but instead sought to hold Martin

---

[3] While more invasive searches, such as strip searches or those involving "squeezing and kneading" of the crotch area can become problematic under the Eighth Amendment when done by members of the opposite sex, *See Jordan v. Gardner*, 986 F.2d 1521, 1524–25 (9th Cir. 1993) (en banc), video evidence confirms that no such prolonged contact occurred here. Cruger Decl. ¶ 7, Exs. 3–4.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. NO. 3:18-cv-05929-BHS-JRC

18

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445

accountable after review of video evidence demonstrated Martin's claims were objective false and misleading.  Case law from this very Court supports the premise that inmates can be infracted for providing false information through a PREA complaint. *Payment*, 2015 WL 4724626, at *6. Nor would Martin's false claims be entitled to any First Amendment protection, generally. *See Nat'l Labor Relations Bd. v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers Union, Local 433*, 891 F.3d 1182, 1187 (9th Cir. 2018) ("The First Amendment does not afford unbridled protection to . . . harassing and intimidating conduct."). As such, Defendants violated no clearly established right and the case law at the time of their conduct would have indicated to them that their conduct was constitutional.

All the Defendants are therefore entitled to qualified immunity, even if some of Martin's claims do survive summary judgment.

## IV.    CONCLUSION

Defendants respectfully request that this Court grant their motion for summary judgment and dismiss Martin's claims against them, with prejudice.

RESPECTFULLY SUBMITTED this 6th day of March, 2020.

ROBERT W. FERGUSON
Attorney General

*s/ Marko L. Pavela*
MARKO L. PAVELA, WSBA #49160
Assistant Attorney General
Corrections Division
P.O. Box 40116, Olympia, WA  98504-0116
360-586-1445
Marko.Pavela@atg.wa.gov

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO. NO. 3:18-cv-05929-BHS-JRC

19

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
PO Box 40116
Olympia, WA 98504-0116
(360) 586-1445